**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TELLY E. PURNELL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 20-00449-B** |
| | * | |
| **KILOLO KIJAKAZI,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Telly E. Purnell (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.  On November 3, 2021, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 21).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**[1]

Plaintiff filed his application for benefits on August 23, 2018.  He alleges disability beginning August 31, 2014, based on high blood pressure and sleep apnea.  (Doc. 16 at 122, 144, 147). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before an Administrative Law Judge (hereinafter "ALJ").  (Id. at 32).  Plaintiff attended the hearing with his attorney and provided testimony related to his claims.  (Id. at 34).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 49).  On March 2, 2020, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 13).  The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision dated March 2, 2020, became the final decision of the Commissioner.  (Id. at 4).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issue on Appeal**

> **Whether the ALJ erred in failing to assess whether claimant had good cause for failing to follow prescribed treatment as provided by SSR 18-3p and SSR 16-3p?**

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

### III. **Factual Background**

Plaintiff was born on May 31, 1974, and was forty-four years of age at the time of his administrative hearing on December 6, 2019. (Doc. 16 at 32, 144). Plaintiff graduated from high school and completed four or more years of college. (Id. at 149).

Plaintiff last worked from 2007 to 2013 as a car salesman. (Id. at 36, 183). Prior to that, Plaintiff worked as a salesperson for various mattress and furniture stores.    (Id. at 37, 183).

Plaintiff testified that he can no longer work because of his high blood pressure, for which he takes medication. (Id. at 39). Plaintiff testified that his high blood pressure causes him to have dizziness, swelling and pain in his feet, and headaches. (Id. at 40-43). In addition, Plaintiff reported that he uses a CPAP machine for his sleep apnea, but still experiences excessive daytime sleepiness and lack of concentration. (Id. at 45-48).

### IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.   Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The

4

Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  At the fourth step, the ALJ must make an assessment of the claimant's RFC.  See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004).  The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional

capacity, age, education, and work history.  Sryock v. Heckler, 764
F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate
that there are such jobs the claimant can perform, the claimant
must prove inability to perform those jobs in order to be found
disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).
See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing
Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.   Discussion**

> ### A. The ALJ did not err in assessing whether claimant had good cause for failing to follow prescribed treatment as provided by Social Security Ruling ("SSR") 18-3p and SSR 16-3p.

Plaintiff's sole claim of error in this appeal is that the ALJ
erred because he did not assess whether Plaintiff had good cause
for not following prescribed treatment as provided by SSR 18-3p and
SSR 16-3p.  (Doc. 17 at  2).  Specifically, Plaintiff argues that
the ALJ should have considered his "ability to afford" treatment as
a factor when evaluating Plaintiff's treatment history.   (Id.).
The Government counters that the ALJ's decision is consistent with
the requirements of 18-3p and SSR 16-3p and, further, that the RFC
in this case is fully supported by the substantial evidence.  (Doc.
18 at 1-9).  Having reviewed the record at length, the Court finds
that Plaintiff's claim is without merit.

In the instant case, the ALJ found that Plaintiff has the
severe impairments of hypertension, left ventricular hypertrophy,

6

hypertensive heart disease without heart failure, sleep apnea, and obesity.  (Doc. 16 at 15).  The ALJ also determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of medium work with the following restrictions:  Plaintiff can frequently stoop and kneel; occasionally climb ramps and stairs; occasionally crawl; and must avoid concentrated exposure to hazards such as machinery and unprotected heights.  (Id. at 16).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform his past work as an auto salesperson (skilled and light) and furniture sales (semi-skilled and light).  In addition, the ALJ concluded that there are other jobs in the national economy that Plaintiff can perform, such as automobile assembler (unskilled and medium), salesperson general merchandise (semi-skilled and light), and hand packager (unskilled and medium).  (Id. at 22).  Thus, the ALJ found that Plaintiff was not disabled at any time from August 31, 2014, the alleged onset date, through December 31, 2019, the date last insured.  Having reviewed the evidence at length, the Court is satisfied that the ALJ did not err in his findings regarding Plaintiff's non-compliance with prescribed treatment.

First, in addressing the issue of Plaintiff's non-compliance with treatment, "the Court must not conflate two different standards related to a failure to comply with a doctor's orders."  Lane v. Colvin, 2014 U.S. Dist. LEXIS 180738, *9, 2015 WL 269142, *4 (M.D.

Ga. Jan. 21, 2015). "The first standard allows ALJs to find claimants 'not disabled' if those claimants do not follow prescribed treatment that can restore their ability to work." Id. (citing 20 C.F.R. §§ 404.1530, 416.930; McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988)(§§ 404.1530 and 416.930 permit the denial of disability benefits for failure to follow prescribed treatment). The second standard allows ALJs to consider the failure to follow prescribed treatment as a *factor* in assessing a claimants' subjective complaints. Lane, 2014 U.S. Dist. LEXIS 180738 at *9, 2015 WL 269142 at *4 (citing S.S.R. 96-7p) (emphasis in original).

With respect to the first standard, the Social Security Regulations provide that, "[i]n order to get benefits, [a claimant] must follow treatment prescribed by [the claimant's] medical source(s) if this treatment is expected to restore [his or her] ability to work." Puryear v. Saul, 2021 U.S. Dist. LEXIS 78347, *13, 2021 WL 1603237, *7 (S.D. Ala. Apr. 23, 2021)(quoting 20 C.F.R. §§ 404.1530(a), 416.930(a)). "If a claimant does 'not follow the prescribed treatment without a good reason, [the Commissioner] will not find [the claimant] disabled . . . .'" Id. (quoting 20 C.F.R. §§ 404.1530(b), 416.930(b)). "The Commissioner 'will consider [a claimant's] physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if [the claimant] ha[s] an acceptable reason for failure to follow prescribed treatment.'" Id. (quoting

20 C.F.R. §§ 404.1530(c), 416.930(c)).

SSR 18-3p,[3] which provides guidance on how the Agency applies its policy related to a claimant's failure to follow prescribed treatment, offers various examples of acceptable good cause reasons for not following prescribed treatment, including that proffered by Plaintiff here, *i.e.*, "cost," that is, that "[t]he individual is unable to afford prescribed treatment, which he or she is willing to follow, but for which affordable or free community resources are unavailable." Id., 2018 WL 4945641. The Social Security Administration has clarified, however, that the foregoing provisions apply only where the Commissioner has found, in the first instance, that an individual is entitled to disability benefits, but that, because of his non-compliance with prescribed treatment, the Agency deemed him not disabled.

In SSR 18-3p, the Agency further explains:

> We will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist:
>
> 1. *The individual would otherwise be entitled to benefits based on disability* . . . .;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and

---

[3] SSR 18-3p rescinded and replaced SSR 82-59 for determinations and decisions made on or after October 29, 2018. See SSR 18-3p, 2018 WL 4945641, *1 & n.1 (Oct. 2, 2018). See also Kearns v. Saul, 2020 U.S. Dist. LEXIS 172320, *29 n.3, 2020 WL 5627459, *7 n.3 (M.D. Fla. Sept. 21, 2020).

> 3. We have evidence that the individual did not follow the prescribed treatment. . . .
>
> We only perform the failure to follow prescribed treatment analysis discussed in this SSR *after* we find that an individual is entitled to disability . . . benefits under titles II or XVI of the Act, regardless of whether the individual followed the prescribed treatment. *We will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled . . . .*

SSR 18-3p (emphasis added); 83 FR 49616-01, 2018 WL 4694327 (Oct. 2, 2018); see also Hester v. Secretary of Health & Human Servs., 886 F.2d 1315, *3 (6th Cir. 1989)("Failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore ability to work."). If, and only if, all three of the foregoing conditions are met, will the Agency assess whether the prescribed treatment, if followed, would be expected to restore the individual's ability to engage in substantial gainful activity and whether the claimant had "good cause" for not following the prescribed treatment. See SSR 18-3p, 2018 WL 4694327.

In this action, the three prerequisites of SSR 18-3p are not met because the ALJ did not find Plaintiff disabled in the first instance. Indeed, nowhere in his decision did the ALJ state that Plaintiff was disabled but that his non-compliance with prescribed treatment justified a finding of "not disabled." Therefore, SSR

18-3p is not applicable to the instant case.  See Puryear, 2021 WL 1603237 at *9.  The Court now turns to the second standard.

The second standard, addressed in SSR 16-3p,[4] allows ALJs to consider a claimant's failure to follow prescribed treatment as a *factor* in assessing the claimant's *subjective complaints* about the effects of his pain and other symptoms.  SSR 16-3p provides, in pertinent part:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult. . . . Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or *if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints*. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p.  See SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following: . . .
          • An individual may not be able to afford treatment and may not have access to free or low-cost medical services.

          . . . The above examples illustrate possible reasons an individual may not have pursued treatment. However, we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.

SSR 16-3p, 2017 WL 5180304 at **9-10 (footnote omitted)(emphasis added).

The ALJ in the instant case employed the second standard in assessing Plaintiff's failure to follow prescribed treatment. That is, the ALJ did not base his finding of non-disability on Plaintiff's failure to comply with prescribed treatment; rather, the ALJ discounted Plaintiff's subjective complaints about the effects of his pain and other symptoms due to the inconsistency between those complaints and his failure to follow prescribed treatment.[5]

---

[5] Plaintiff correctly points out that the ALJ's decision mentions, with emphasis, Plaintiff's non-compliance with his medication regimen, use of his CPAP machine, and gaps in medical treatment. Considering the ALJ's decision as a whole, it is apparent that Plaintiff's non-compliance was a factor in evaluating his

As discussed, SSR 16-3p provides that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record [due to failure to pursue treatment or to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304 at *9. Here, Plaintiff claims that the ALJ failed to consider his inability to afford his prescribed treatment as good cause for his non-compliance. A review of the record supports, at least to some extent, Plaintiff's claim that some of his non-compliance may have been due to his inability to afford the prescribed treatment. For example, the record reflects that, in January 2018, Plaintiff was non-compliant with using his CPAP machine because it needed replacement parts. (Doc. 16 at 307, 395, 399, 433-34). In addition, on September 26, 2018, Plaintiff reported to the Agency that he had not seen a cardiologist due to lack of insurance and had not used his CPAP machine for weeks due to a lack of funds to have it repaired. (Id. at 56). Thus, the record supports Plaintiff's claim that there may have been times during his treatment history that he was without a working CPAP machine due to lack of funds and that he may have delayed seeking treatment from

_____

subjective complaints but was not the basis for the ALJ's denial of disability.

a cardiologist due to his inability to afford treatment.[6]  That being said, the record also reflects that, in August 2018, Plaintiff reported that he was using his CPAP machine; on April 8, 2019, Plaintiff was "going today to get the new CPAP for [obstructive sleep apnea];" and in May and July 2019, he was using his CPAP machine.  (Doc. 16 at 307, 395, 399, 433-34).

In his decision, the ALJ discussed Plaintiff's non-compliance with prescribed treatment.  He noted Plaintiff's failure to use his CPAP machine, failure to take his blood pressure medication, failure to make follow up appointments and obtain lab work, failure to monitor his blood pressure at home on a regular basis, and failure to wear his compression stockings.  (Doc. 16 at 17-19).  Contrary to Plaintiff's argument, the ALJ did consider possible good cause reasons for his non-compliance, such as the possibility that Plaintiff's symptoms were resistant to prescribed treatment, that the prescribed treatment had been tried but failed, that all

---

[6] The record also reflects that Plaintiff did see a cardiologist, Dr. John F. LeDoux, M.D., at Cardiology Associates, from April to November 2019, for treatment of his hypertension.  Dr. LeDoux's physical examination findings during that period were largely normal, and Dr. LeDoux noted that Plaintiff's blood pressure was stable and improving.  (Doc. 16 at 447-66).  Dr. LeDoux also noted that Plaintiff reported not checking his blood pressure at home. (Id. at 455, 459).  Plaintiff's primary physician, Dr. Patrick L. Murphy, Jr., M.D., likewise noted in July 2019 that Plaintiff was not checking his blood pressure at home.  (Id. at 431).  There is no suggestion that Plaintiff's failure to regularly check his blood pressure at home, which was part of his treatment regimen, was related to any inability to pay for treatment.

possible medication choices were exhausted without success, or that Plaintiff had ongoing difficulties with the side effects of prescribed medication; however, the ALJ found these possible justifications to be unsupported by the record. (Id. at 20).

Although the ALJ did not discuss whether cost was a factor in any aspect of Plaintiff's non-compliance, it is clear that at least some of Plaintiff's non-compliance, namely, his failure to monitor his blood pressure at home and to wear compression stockings for swelling, were not due to lack of funds or inability to pay for treatment, and Plaintiff makes no such claim. Thus, the ALJ was free to consider Plaintiff's non-compliance with respect to those aspects of his treatment regimen in assessing the consistency of Plaintiff's subjective complaints against the objective record evidence.

With respect to the ALJ's failure to address the effect of lack of funds on some aspects of Plaintiff's non-compliance (namely, Plaintiff's failure to use his CPAP machine during the time that it needed replacement parts, Plaintiff's failure to consistently take his medication, and Plaintiff's delay in seeking medical treatment at times), the Court finds, under the circumstances of this case, that any error in that regard is harmless. See Miller v. Colvin, 2016 U.S. Dist. LEXIS 100901, *32, 2016 WL 4097097, *10 (S.D. Ala. Aug. 2, 2016)(citing Battle v. Astrue, 243 Fed. Appx. 514, 522 (11th Cir. 2007)(unpublished)(errors are harmless if they do not

prejudice the claimant)).

In the instant case, although non-compliance with treatment was a factor in the ALJ's assessment of Plaintiff's subjective complaints, there is no indication that it was a controlling factor. To the contrary, in assessing the consistency of Plaintiff's subjective complaints with the record evidence, the ALJ considered several other factors, such as the absence of objective documentation that any physician had opined that Plaintiff possessed disabling functional limitations as a result of any medical condition or resulting symptoms; the absence of objective documentation that Plaintiff's performance of his daily activities had been substantially impaired due to his diagnosed conditions; the absence of objective medical evidence to substantiate Plaintiff's complaints related to his alleged impairments; and the absence of objective medical evidence to support Plaintiff's allegations of totally incapacitating symptoms and disabling loss of functional capacity. (Doc. 16 at 20). Specifically, the ALJ noted that Plaintiff's records from Cardiology Associates and the Alabama Medical Group reflected that his benign hypertension, while at times elevated, was generally responding to medication, was stable, and was improving. (Id. at 18-19, 403, 407, 431, 433-34, 437, 442, 445, 447-49, 451-53). Moreover, Plaintiff's records related to his sleep apnea reflect that, after a four-year absence of treatment, Dr. James Hunter, M.D., increased the pressure on

Plaintiff's CPAP machine and noted improvement in symptoms.  He further noted that Plaintiff was using his machine "faithfully," and that Plaintiff had "more energy" and "less fatigue."[7]  (Id. at 349, 427).

In addition, Plaintiff's physical examination findings from his treating physicians were consistently largely normal.  (Id. at 432, 437, 443, 448, 452-53, 456).   Likewise, all imaging of Plaintiff's chest and head, as well as an EKG, were largely unremarkable, and Plaintiff's kidney ultrasound was normal.  (Id. at 372, 375, 381, 398, 444, 462, 464).   Moreover, at no time did any physician opine that Plaintiff's symptoms from sleep apnea and/or hypertension prevented him from performing work consistent with his RFC.  (Id. at 349).

Ultimately, the ALJ concluded that the *objective medical evidence of record* indicated that Plaintiff's statements regarding the severity, frequency, and duration of his symptoms were overstated; that "the objectively demonstrable evidence of record . . . failed to support that the claimant [was] impaired as he alleged at his hearing and in documentation;" and that after considering the evidence related to his impairments, "there [was] nothing that would preclude the claimant's performance of work activity" as set forth in the RFC.  (Doc. 16 at 20-21).

---

[7] As discussed, Plaintiff obtained a new CPAP machine on April 8, 2019.  (Doc. 16 at 319, 399, 415).

The Court is satisfied that the foregoing factors considered by the ALJ, which were based on objective record evidence, were the controlling factors in the ALJ's determination that Plaintiff's subjective complaints were inconsistent with the substantial record evidence in this case. Therefore, because non-compliance was not a controlling factor in the ALJ's assessment of Plaintiff's subjective symptoms, the ALJ's failure to consider Plaintiff's ability to pay as an additional good cause reason for his non-compliance with his CPAP machine (when it was broken), failure to take his medication, and delay in seeing a cardiologist, is at most harmless error. See Nelson v. Kijakazi, 2021 U.S. Dist. LEXIS 175483, *17, 2021 WL 4177203, *6 (S.D. Ind. Aug. 20, 2021), *report and recommendation adopted sub nom.,* Nelson v. Saul, 2021 WL 4171045 (S.D. Ind. Sept. 14, 2021)(ALJ's error in not considering if there were good reasons why claimant declined repeat surgery and injections as related to his neck and shoulder pain, before the ALJ concluded that forgoing this treatment indicated that his pain was not as great as alleged, was harmless because this was just one of several factors that the ALJ considered when conducting the symptom evaluation analysis)(citing Kittelson v. Astrue, 362 Fed. Appx. 553, 558 (7th Cir. 2010)(ALJ should have considered the reasons for claimant's lack of treatment; however, ALJ's error in credibility analysis is harmless when ALJ articulates other reasons for adverse credibility determination).

Moreover, the Court is satisfied that the objective record evidence detailed above constitutes substantial evidence to support the ALJ's determination that Plaintiff's statements regarding the severity, frequency, and duration of his symptoms were inconsistent with the record. See Puryear, 2021 WL 1603237 at *10 (quoting Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)("[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Last, the Court is satisfied that the objective record evidence detailed above constitutes substantial evidence to support the RFC for a range of medium work, with the stated restrictions.  Residual functional capacity is a measure of what Plaintiff can do despite his credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).  Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's

decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).  Plaintiff has failed to meet his burden in this case.

Indeed, based on the objective medical evidence detailed herein, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of medium work, with the stated restrictions.  Plaintiff has failed to show that any limitations caused by his impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions.  Accordingly, Plaintiff's claim must fail.[8]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Plaintiff's application for benefits is therefore due to be **AFFIRMED**.

## VII.  Conclusion

For the reasons set forth herein, and upon careful

---

[8] To the extent that Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

      **DONE** this **10th** day of **December, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
